Argued and submitted January 11, 2012, affirmed May 30, 2013

Linda TWO TWO,
an individual;
and Patricia Fodge,
an individual,
*Plaintiffs-Appellants*,

*v.*

FUJITEC AMERICA, INC.,
a Delaware corporation,
*Defendant-Respondent*,

*and*

CENTRIC ELEVATOR CORPORATION OF
OREGON, INC.,
an Oregon corporation,
*Defendant.*

Multnomah County Circuit Court
090100985; A145591

305 P3d 132

Brandon Mayfield argued the cause for appellants. With him on the briefs was Law Office of Brandon Mayfield LLC.

Thomas M. Christ argued the cause for respondent. With him on the brief were Julie A. Smith, Cosgrave Vergeer Kester LLP, Michael D. Kennedy, and Kennedy Bowles, P.C.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

ORTEGA, P. J.

### ORTEGA, P. J.

Plaintiffs appeal from a limited judgment in favor of defendant Fujitec America, Inc., assigning error to the trial court's grant of summary judgment to Fujitec on plaintiff's common law negligence claim and their claims under Oregon's product liability statutes, ORS 30.900 to 30.920.[1] Plaintiffs' claims arose from injuries they sustained in separate incidents while riding in an elevator that Fujitec had "modernized," maintained, and inspected.[2] The trial court granted summary judgment to Fujitec, concluding that plaintiffs had failed to produce evidence of causation on their negligence claim and that their product liability claims could not be sustained because Fujitec was not a "manufacturer, distributer, seller, or lessor of a product" under Oregon product liability law.

On appeal, plaintiffs contend that summary judgment was improper because they submitted evidence on their negligence claim, including an affidavit under ORCP 47 E, that created genuine issues of material fact or, alternatively, that the trial court should have denied summary judgment because the doctrine of *res ipsa loquitur* would allow a jury to infer causation. Plaintiffs also contend that their product liability claims were not barred because Fujitec's modernization of the elevator qualified Fujitec as a "manufacturer" under ORS 30.900. We affirm the trial court's grant of summary judgment because plaintiffs failed to offer any evidence on causation in response to Fujitec's motion for summary judgment and the product liability statute does not apply to Fujitec.

Summary judgment is appropriate if there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. ORCP 47 C. There is no genuine issue of material fact if, based on the record, "no

---

[1] The trial court also granted summary judgment to Fujitec on plaintiffs' breach of warranty claims; plaintiffs do not challenge that decision on appeal.

[2] Plaintiffs also named Centric Elevator Corporation of Oregon, Inc., as a defendant, alleging claims of negligence and product liability. Centric moved to join Fujitec's summary judgment motion as to the product liability claims, but not on the negligence claims. The court denied Centric's motion, and Centric has not appeared on appeal.

objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment." *Id.* To determine whether a genuine issue of material fact exists in this case, we review the record in the light most favorable to plaintiffs—the nonmoving party—and draw all reasonable inferences in their favor. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). We state the facts consistently with that standard.

Plaintiffs were injured in separate incidents in 2008 when an elevator in the building in which they worked dropped unexpectedly and stopped abruptly. In 2001, Fujitec, pursuant to a contract with the federal General Services Administration (GSA), had modernized the elevator (originally constructed in the 1960s or 1970s) by installing new solid-state microprocessor controls, replacing the old relay logic elevator controls, installing a seismic protection system, and remodeling the elevator car interior. After completing the project, Fujitec maintained and periodically tested and inspected the elevator pursuant to a contract with GSA. Fujitec performed those services through 2007, at which time it assigned, via contract, its obligations and rights to Centric Elevator Corporation of Oregon.

After sustaining their injuries, plaintiffs filed a complaint, alleging that Fujitec and Centric "negligently designed, installed, and maintained" the elevator in which plaintiffs were injured, which was the "direct and proximate cause" of plaintiffs' injuries. Plaintiffs also claimed that Fujitec was strictly liable under Oregon's product liability law, ORS 30.920, because Fujitec's negligent design, construction, and installation left the elevator "defective and dangerous" such that "it failed to perform in the manner reasonably to be expected in light of [its] nature and intended function."

Fujitec moved for summary judgment on all claims asserted by plaintiffs. Fujitec argued that it could not be held liable under product liability law because it applies only to "manufacturers, distributers, sellers, and lessors" of products and there was no evidence that Fujitec manufactured, distributed, sold, or leased the elevator. As for the negligence claim, Fujitec maintained that (1) its modernization met or

exceeded industry standards and complied with GSA's specifications; (2) it never "possessed" or "controlled" the elevator after December 1, 2007; (3) there was no evidence of causation; and (4) it inspected and maintained the elevator properly through December 2007. Fujitec supported its motion with an employee's affidavit, asserting that Fujitec did not manufacture the elevator in question or supply any of its parts and that Fujitec's work on the elevator conformed to industry standards. The employee also testified that elevators can simply drop "through no fault or negligence of anyone, including, simply because of the age of the elevators."

Plaintiffs' responded with several exhibits and an affidavit prepared by their attorney pursuant to ORCP 47 E. The affidavit stated, in part:

"4. Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant Fujitec's modernization of the elevators in the 911 building, and Centric's inspection and repair of those elevators was defective and dangerous to an extent beyond that which an ordinary consumer would have expected. Plaintiffs' expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment.

"5. Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant Fujitec was negligent in [its] service and maintenance of the elevators in the 911 building. Plaintiffs expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

The trial court granted summary judgment, concluding that "there's no admissible evidence of causation." As to plaintiffs' product liability claims, the court determined that "as a matter of law * * * Fujitec did not manufacture or sell or distribute or lease the elevator * * * or any of its parts." The court entered a limited judgment dismissing plaintiffs' claims against Fujitec.

In challenging on appeal the grant of summary judgment, plaintiffs assert three arguments. First, plaintiffs maintain that the evidence that they put forth in opposition to summary judgment—an ORCP 47 E affidavit and exhibits—was sufficient to create a genuine issue of material fact on their negligence claim. Alternatively, they assert that summary judgment was improper because the facts in this case would allow a jury, under the doctrine of *res ipsa loquitur*, to infer both negligence and causation against Fujitec.[3] Finally, for their product liability claim, they contend, as they did before the trial court, that under existing case law, Fujitec's modernization of the elevators is "comparable" to the role of a manufacturer, such that Fujitec can be held liable under such a theory.

We begin with plaintiffs' ORCP 47 E affidavit. As an initial matter, the filing of an affidavit under ORCP 47 E precludes summary judgment only where expert opinion evidence is required to establish a genuine issue of material fact. *Deberry v. Summers*, 255 Or App 152, 163, 296 P3d 610 (2013). In such cases, an attorney affidavit asserting that a retained expert will provide admissible evidence is sufficient, without more, to create a material factual dispute. *Piskorski v. Ron Tonkin Toyota, Inc.*, 179 Or App 713, 718, 41 P3d 1088 (2002). The trial court presumes that the expert will testify "on every issue on which summary judgment is sought" unless the affidavit "specifies the issues on which the expert will testify[.]" *Id.* If the affidavit specifies the issues on which the expert will testify, however, the trial court will presume that those are the only issues on which the expert's testimony will create genuine issues of material fact. *Id.*; *Moore v. Kaiser Permanente*, 91 Or App 262, 265, 754 P2d 615, *rev den*, 306 Or 661 (1988); *see also Stotler v. MTD Products, Inc.*, 149 Or App 405, 409, 943 P2d 220 (1997) (explaining that an attorney must specify the issues

---

[3] Plaintiffs also advance an argument that Fujitec is vicariously liable for any negligence of Centric because of the contract between the parties. We reject that argument without discussion.

Further, plaintiffs contend that the trial court erred by granting summary judgment because a different trial court judge denied Fujitec's motion for summary judgment in a separate case involving a separate plaintiff who alleged sustaining injuries in the same elevator that is part of this case. We also reject that argument without discussion.

on which an expert will testify if the attorney does not have a good faith belief that the expert's testimony will create a genuine issue of material fact on all issues).

As noted, plaintiffs' ORCP 47 E affidavit stated, in relevant part:

"4. Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant *Fujitec's modernization of the elevators* in the 911 building, and Centric's inspection and repair of those elevators *was defective and dangerous to an extent beyond that which an ordinary consumer would have expected.* Plaintiffs' expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment.

"5. Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that Defendant *Fujitec was negligent in [its] service and maintenance of the elevators in the 911 building.* Plaintiffs expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

(Emphases added.)

Fujitec asserts that the affidavit was too narrow to defeat summary judgment, explaining that it was sufficient to create genuine issue of material fact on only two specific issues: (1) that Fujitec's modernization of the elevator was dangerous and defective and (2) that Fujitec negligently serviced and maintained the elevator. According to Fujitec, the affidavit does not specify that plaintiffs' expert had offered an opinion on the necessary element of causation—*i.e.*, that, but for the negligence of Fujitec, plaintiffs would not have suffered the harm that is the subject of their claims. *See Watson v. Meltzer*, 247 Or App 558, 565, 270 P3d 289 (2011), *rev den*, 352 Or 266 (2012) (examining "but-for" causation). Fujitec contends that summary judgment was proper because plaintiffs' affidavit failed to mention causation, and none of the evidence submitted by plaintiffs in

opposition to summary judgment created a genuine issue of material fact on that element. Plaintiffs counter that their use of the term "negligent" in the affidavit was sufficiently broad to encompass the element of causation and defeat summary judgment. They also argue that, regardless of any deficiency in the affidavit, they introduced evidence sufficient to defeat summary judgment.

Ultimately, we agree with defendant. Fujitec's summary judgment motion was based, in part, on the lack of evidence of causation. Plaintiffs' ORCP 47 E affidavit specified the issues on which their expert would testify—*i.e.*, that Fujitec "was negligent in [its] service and maintenance" of the elevator—but did not indicate that the expert had offered an opinion on whether Fujitec's negligence was the cause of their injuries, an element essential to proof of a negligence claim. We recognize that, in certain contexts, "negligence" can be understood to encompass all of the elements that must be proven to establish a negligence claim, including causation. In this case, however, plaintiffs' use of the word "negligent" can only be understood to refer to Fujitec's failure to meet the standard of care applicable to servicing and maintaining the elevator. Most tellingly, plaintiffs describe Fujitec as negligent "in [its] service and maintenance" of the elevator, which unambiguously indicates that their expert's opinion goes to Fujitec's exercise of care in servicing and maintaining the elevator, but does not address whether Fujitec's conduct caused the harm that befell the plaintiffs. The separation between the concept of negligent conduct, *i.e.*, the failure to exercise the degree of care required, and causation is consistent with how those concepts are treated in law. *See, e.g., Dew v. Bay Area Health District*, 248 Or App 244, 258, 278 P3d 20 (2012) (noting that a jury found the defendant "negligent" but did not find that the defendant's negligence caused the decedent's death). Accordingly, this is a case where plaintiffs' enumeration of the elements on which their unnamed expert would testify reasonably leads to the conclusion that they would not be offering expert testimony on causation.

We also reject plaintiffs' contention that the evidence they submitted in opposition to Fujitec's summary judgment

motion was sufficient, independent of the ORCP 47 E affidavit, to create a genuine issue of material fact on the issue of causation. Without recounting that evidence in detail, suffice it to say that Fujitec's contracts with GSA and Centric, plaintiffs' medical records, and incident logs of service calls for the elevator did not create a genuine issue of material fact as to whether Fujitec's alleged negligent conduct caused the harm that befell plaintiffs.

Alternatively, plaintiffs contend that, even if their ORCP 47 E affidavit was insufficient to create a jury issue as to causation, summary judgment should have been denied because the doctrine of *res ipsa loquitur* would allow a jury to infer causation in this case. Generally, *res ipsa loquitur* is a rule of evidence that allows a jury to infer negligence and causation if the injury that occurred is of the kind that more probably than not would not have occurred in the absence of the defendant's negligence. *McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 353, 723 P2d 288 (1986).

Fujitec asserts that *res ipsa loquitur* does not apply in this case because elevators are complicated pieces of machinery and an ordinary person does not know how they work or what could cause one to fail in the manner alleged by plaintiffs. Fujitec acknowledges that its alleged negligence could be one possible cause of the malfunction, but maintains that it was not the only possible cause. Accordingly, Fujitec asserts that, without expert testimony on the matter, a jury could not infer that this is the type of accident that ordinarily would not occur without Fujitec's negligence.

Courts determine whether *res ipsa loquitur* applies as a matter of law. *Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or App 637, 640, 978 P2d 429, *rev den*, 329 Or 319 (1999). An inference of negligence or causation will be permitted only if a plaintiff establishes the fundamental elements of the doctrine: "(1) that there is an injury, (2) that the injury is of a kind which ordinarily does not occur in the absence of someone's negligence, and (3) that the negligence that caused the event was more probably than not attributable to a particular defendant." *Hammer v.*

*Fred Meyer Stores, Inc.*, 242 Or App 185, 190-91, 255 P3d 598, *rev den*, 350 Or 716 (2011) (internal quotation marks omitted).

We focus our analysis on the second element—that the injury is one that does not normally occur in the absence of someone's negligence. Generally, it is the plaintiff's burden to present enough evidence for a jury to reasonably find that it is more probable than not that the injury would not normally occur in the absence of negligence. *Watzig v. Tobin*, 292 Or 645, 652 n 6, 642 P2d 651 (1982). As noted, Fujitec asserts that, because the operation of an elevator is outside the common understanding of an ordinary person, expert testimony is required to show that the type of accident that occurred here is one that ordinarily would not occur in the absence of negligence.

We conclude that the summary judgment record lacks a legally sufficient basis for a jury to conclude that the type of injury that occurred in this case is of a kind that ordinarily does not occur in the absence of negligence. *See Bingenheimer v. State Farm Mutual Auto. Ins. Co.*, 196 Or App 316, 322, 100 P3d 1132 (2004) (deciding that, without any evidence as to the relative probability that a vehicle would leak oil with or without negligence, "a jury is without a legally sufficient basis for inferring, based on *res ipsa loquitur*, that negligence of [the] driver of [the] vehicle caused the plaintiff's injuries"). Given that "mechanical objects suffer breakdowns every day without someone being negligent," *id.*, and the only evidence in the summary judgment record is the affidavit offered by Fujitec that the type of incident alleged by plaintiffs is of the sort that can occur "in the absence of negligence by anyone," we conclude that plaintiffs failed to establish the second element of *res ipsa loquitur*. That is, they presented no evidence as to the probability that an elevator would fail in this manner with or without negligence, and this is not the type of case where common experience would allow the conclusion that a certain incident does not occur in the absence of negligence. *See, e.g., Jeffries v. Murdock*, 74 Or App 38, 44-45, 701 P2d 451, *rev den*, 299 Or 584 (1985) (medical malpractice foreign object in the body case).

Finally, we address plaintiffs' product liability claims. A "product liability civil action" can include both negligence and strict liability claims within its scope. *Mason v. Mt. St. Joseph, Inc.*, 226 Or App 392, 397, 203 P3d 329 (2009). ORS 30.900 defines a product liability civil action as

"a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

"(1)   Any design, inspection, testing, manufacturing or other defect in a product;

"(2)   Any failure to warn regarding a product; or

"(3)   Any failure to properly instruct in the use of a product."

ORS 30.920 sets out the elements for a strict product liability claim. Strict liability attaches to

"[o]ne who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the *property of the user or consumer* * * * if:

"(a)   The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b)   The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased."

ORS 30.920(1).

As noted, plaintiffs brought a strict liability claim based on their allegation that Fujitec designed, installed, and maintained the elevator in such a manner as to leave it in a defective condition unreasonably dangerous to the user. A strict liability claim under ORS 30.920 can only attach to "[o]ne who sells or leases any product." Here, the trial court concluded that Fujitec "did not manufacture or sell or distribute or lease the elevator * * * or any of its parts" and, accordingly, granted summary judgment.

Plaintiffs' position on appeal is that the kind of work that Fujitec did in this case, *i.e.*, installing another manufacturer's products in the elevator system for GSA, is the sale of a product under ORS 30.920. Plaintiffs maintain that the

"key determination [in reaching that conclusion] is whether it was a custom install." We ultimately conclude that, in light of the undisputed facts, Fujitec was not subject to ORS 30.920.

Fujitec advanced evidence in support of summary judgment that demonstrated the following: Westinghouse originally constructed the elevator and elevator systems several decades before Fujitec entered into a contract with GSA. During the "modernization," GSA retained its own architect, designer, project manager, construction manager, and contracts specialist. All components installed by Fujitec were designed, manufactured, and sold by vendors and suppliers specified or required by GSA. The scope of Fujitec's work on the elevator consisted of modernizing it by installing the manufactured components that were specified by GSA.

Plaintiffs rely on *Jamison v. Spencer R.V. Center, Inc.*, 98 Or App 529, 779 P2d 1091 (1989), and *Brokenshire v. Rivas and Rivas, Ltd.*, 142 Or App 555, 922 P2d 696 (1996), *rev dismissed as improvidently allowed*, 327 Or 119 (1998), for the proposition that Fujitec's assembly of component parts for GSA was akin to the creation and sale of a product for purposes of ORS 30.920. Fujitec counters that *Jamison* and *Brokenshire* are inapposite and that it simply provided a service when it modernized the elevator, which, under another line of authority, makes it not subject to strict liability.

In *Jamison*, the plaintiff and the defendant had entered into a contract for the sale of a travel trailer, which included the sale and installation of a trailer hitch provided by the defendant. 98 Or App at 531. The installation of the hitch consisted of "the assembly, including welding, of component parts of the hitch assembly." *Id.* The plaintiff later lost control of the truck when a weld on the hitch assembly failed. To apply the correct statute of limitations, we examined whether the plaintiff's claim was a "product liability civil action" within the meaning of ORS 30.900. The plaintiff had alleged that the defendant, who sold the hitch to the plaintiff, had made inadequate welds in the hitch system and installed a deficient stiffener bar. *Id.* at 533. We concluded that "[t]hose allegations, if proved, would show

that assembly and installation of the trailer hitch created a defect in the hitch, resulting in a defective product being sold to [the] plaintiff." *Id.*

*Brokenshire* is a strict liability case in which the plaintiff sued a company that sold and installed an "acrylic flooring system" to the plaintiff's employer. The plaintiff slipped and fell on the floor and sued, alleging that the defendant was strictly liable under ORS 30.920 because the flooring system was defective and unreasonably dangerous. 142 Or App at 558. The defendant argued that its installation of the floor was a service and not the sale of a "product" under ORS 30.920. *Id.* at 559. After acknowledging that the case might be described as a "hybrid transaction" that was partly the rendering of a service and partly the sale of a product, this court explained that the defendant both sold the acrylic floor and performed the service of installing it. *Id.* at 560-61. Relying on *Jamison*, the court concluded that because the defendant "was required to customize each * * * acrylic floor that it sold by applying the proper mix of acrylic flakes to the wet resin along with a finish coat of sealer to provide the desired combination of color, texture and surface," the defendant's role was to "manufacture on site the floor" that it had sold to the employer. *Id.* at 562.

*Jamison* and *Brokenshire* are inapposite here. Those cases involved the defendant's sale and installation of a component part that was defective. That is, the defendant in those cases created a product by the sale and assembly of component parts that resulted in a defective product. In this case, however, the only evidence in the record is that Fujitec installed component parts provided by others. As such, that evidence only supports the allegation that Fujitec provided a service by installing, per GSA's conditions and specifications, component parts manufactured and supplied by other parties. Accordingly, this case is more in line with the authority that has concluded that ORS 30.920 does not apply to simple service transactions. *See Watts v. Rubber Tree, Inc.*, 118 Or App 557, 848 P2d 1210, *adh'd to on recons*, 121 Or App 21, 853 P2d 1365 (1993), (ORS 30.920 did not apply to a tire recapper because it had simply provided a service when it affixed a new tread to a defective tire casing that was

supplied by another). In such cases, while the plaintiff may have a claim for negligent service, strict product liability does not attach. This is such a case.

Affirmed.