No. 27 May 8, 2014 319

IN THE SUPREME COURT OF THE
STATE OF OREGON

Linda TWO TWO,
an individual,
and Patricia Fodge,
an individual,
*Petitioners on Review,*

*v.*

FUJITEC AMERICA, INC.,
a Delaware Corporation,
*Respondent on Review,*

*and*

CENTRIC ELEVATORS CORPORATION
OF OREGON INC.,
an Oregon Corporation,
*Defendant.*

(CC 090100985; CA A145591; SC S061536)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 11, 2014, at the Willamette University College of Law, Salem.

Brandon B. Mayfield, Law Office of Brandon Mayfield LLC, Beaverton, argued the cause and filed the brief for petitioners on review.

Thomas M. Christ, Cosgrave Vergeer Kester LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Michael D. Kennedy, Kennedy Bowles, P.C., Portland.

Meagan A. Flynn, Preston Bunnell & Flynn, LLP, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* On appeal from Multnomah County Circuit Court, Nena Cook, Judge Pro Tem. 256 Or App 784, 305 P3d 132 (2013).

WALTERS, J.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**WALTERS, J.**

In this case, we decide that the trial court erred in granting defendant's motion for summary judgment on plaintiffs' negligence claim, but did not err in granting defendant's motion for summary judgment on plaintiffs' strict liability claim.

Plaintiffs Linda Two Two and Patricia Fodge filed a complaint against defendant[1] that included claims for negligence and strict liability.[2] Plaintiffs alleged that they had been injured in separate incidents in 2008 when an elevator in the building in which they worked dropped unexpectedly and stopped abruptly. In their negligence claim, plaintiffs alleged that defendant had negligently designed, installed, and maintained that elevator and that defendant's negligence was the direct and proximate cause of plaintiffs' injuries. Plaintiffs also alleged that their injuries were of a type that would not have occurred absent someone's negligence and that the negligence that caused their injuries was more probably than not attributable to defendant. In their strict liability claim, plaintiffs alleged that defendant had designed, installed, and constructed the elevator and that the elevator was defective and dangerous.

Defendant sought summary judgment on both claims. Defendant supported its motion with various documents, including portions of a modernization contract that defendant had entered into with the federal government to upgrade and maintain the elevator systems in the building in which plaintiffs worked. Defendant also filed an affidavit from one of its employees stating, with regard to plaintiffs' negligence claim, that defendant's initial modernization work and its continued maintenance of the elevator conformed to or exceeded industry standards, that defendant was not in possession or control of the elevator after

---

[1] Plaintiffs named both Fujitec America, Inc., and Centric Elevator Corporation of Oregon, Inc., (Centric) as defendants. Centric is not a party on review. When we refer to defendant in this opinion, we mean Fujitec America, Inc.

[2] Plaintiffs' complaint also included a claim for breach of warranty. The trial court granted summary judgment on that claim and plaintiffs did not challenge that decision on appeal to the Court of Appeals, nor do they challenge that decision in this court.

December 31, 2007, and that elevators can drop "through no fault or negligence of anyone, including, simply because of the age of the elevators." With regard to plaintiffs' strict liability claim, the employee averred that the elevator had not been manufactured by defendant, and that defendant's modernization did not include the manufacture or design of the elevator or any of its component parts. Further, the employee stated, the elevator's component parts were manufactured and supplied by vendors and suppliers other than defendant and those vendors and suppliers had been specified by the government or its consultants.

Plaintiffs responded to the challenge to their negligence claim by submitting additional pages of the modernization contract, a number of exhibits that arguably demonstrated that the elevator had a longstanding history of mechanical problems, and an affidavit prepared by their attorney pursuant to ORCP 47 E. That affidavit stated, in part:

"Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant *** was negligent in [its] service and maintenance of the elevators in the 911 building. Plaintiffs['] expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

To respond to defendant's challenge to their strict liability claim, plaintiffs pointed to provisions of the modernization contract and other documents in the record as evidence that defendant had undertaken to redesign and manufacture the elevator and that it had supplied and installed the component parts necessary to fulfill its contractual responsibilities.[3]

---

[3] Plaintiffs' ORCP 47 E affidavit also addressed plaintiffs' strict liability claim. As to that claim, the affidavit provided:

"Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant['s] modernization of the elevators *** was defective and dangerous to an extent beyond that which an ordinary consumer would have expected. Plaintiffs['] expert has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

In reply, defendant contended that plaintiffs' ORCP 47 E affidavit was insufficient to defeat summary judgment on plaintiffs' negligence claim, because it addressed only defendant's negligence in the service and maintenance of the elevator and failed to raise an issue of fact about whether defendant's alleged negligence had caused plaintiffs' injuries. Defendant also argued that the other documents that plaintiffs had submitted in response to the motion for summary judgment were insufficient to raise an issue of fact as to causation.

The trial court granted defendant's motion for summary judgment on both claims. As to the negligence claim, the trial court explained that "there's no admissible evidence of causation." As to the strict liability claim, the court explained that defendant had established, as a matter of law, that it "did not manufacture or sell or distribute or lease the elevator * * * or any of its parts."

Plaintiffs appealed to the Court of Appeals, which affirmed. *Two Two v. Fujitec America, Inc.*, 256 Or App 784, 305 P3d 132 (2013). As to plaintiffs' negligence claim, the Court of Appeals agreed with defendant that plaintiffs' ORCP 47 E affidavit was insufficient to defeat summary judgment. *Id.* at 791. The court understood the affidavit's reference to negligence to be a reference to only one element of a negligence claim—failure to meet the standard of care. Therefore, the court reasoned, the affidavit did not address another element of a negligence claim—causation—and could not defeat summary judgment on that issue. *Id.* As to plaintiffs' strict liability claim, the court concluded that defendant was not subject to ORS 30.920, Oregon's strict liability statute. *Id.* at 796-97. The court explained that ORS 30.920 does not apply to service transactions and that the evidence in the record demonstrated, as a matter of law, that defendant's only role was as a service provider. Defendant had installed component parts manufactured and supplied by others; it had not sold or supplied those component parts. *Id.*

Plaintiffs sought, and we allowed, review. Before this court, plaintiffs argue that their ORCP 47 E affidavit and the other evidence in the summary judgment record

raised material issues of fact that precluded summary judgment on both their negligence and strict liability claims. We turn first to plaintiffs' negligence claim and begin with a review of the summary judgment process set out in ORCP 47.

Under ORCP 47 B, a party against whom a claim is asserted may move, "with or without supporting affidavits or declarations, for a summary judgment in that party's favor as to all or any part thereof."

ORCP 47 C provides, in part:

"The court shall grant the motion if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule."

Thus, under ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue "raised in the motion" as to which the adverse party would have the burden of persuasion at trial.

In this case, defendant moved for summary judgment and "raised in the motion" four issues with regard to plaintiffs' negligence claim: that (1) defendant properly performed the modernization of the elevator; (2) defendant was not in control or possession of the elevator after December 31, 2007; (3) plaintiffs' incidents could have occurred through no fault or negligence of defendant and plaintiffs thus were not entitled to use the doctrine of *res ipsa loquitor* to prove negligence; and (4) defendant properly inspected and maintained the elevator through December 31, 2007. Because plaintiffs had the burden of persuasion on those issues at trial, ORCP

47 C required that they produce sufficient evidence on those issues to defeat summary judgment. In contrast, however, defendant did not "raise in the motion" an issue on which it later relied—that defendant's alleged negligence was not a cause of plaintiffs' injuries. Plaintiffs had the burden of persuasion on that issue at trial and, had defendant raised that issue "in the motion," ORCP 47 C would have required plaintiffs to produce evidence on the issue of causation to defeat summary judgment.

Instead, defendant first raised the issue of causation as a basis for summary judgment in its reply memorandum. There, defendant argued that plaintiffs' ORCP 47 E affidavit was insufficient because it did not establish that defendant's alleged negligence had any causal relationship to plaintiffs' injuries or that defendant did anything that caused the elevator to drop. At the hearing on defendant's motion, defendant pressed that argument. Plaintiffs did not specifically respond; plaintiffs focused in oral argument on the evidence that they contended supported their strict liability claim.

When the case reached the Court of Appeals, plaintiffs contended generally that their ORCP 47 E affidavit "should have been deemed sufficient to controvert the allegations raised" in defendant's motion for summary judgment, but they did not argue specifically that, because defendant did not raise causation as a basis for its motion, plaintiffs were not required to produce evidence on that issue. Rather, plaintiffs claimed that their affidavit created a question of fact as to all elements of their negligence claim, including causation. Plaintiffs contended that their attorney's averment that plaintiffs had retained an expert who had "rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment" was sufficient to defeat summary judgment. Plaintiffs take the same position in this court and do not argue that they were not required to raise a question of fact as to causation because defendant did not raise that issue in its motion for summary judgment.

Thus, as this case comes to us, the Court of Appeals and the parties all have assumed that defendant raised lack of causation as a basis for its motion for summary judgment.

We too will take that course. However, we have described the procedural history and the framework that ORCP 47 C imposes in some detail because we think it important to alert the bench and bar to the rule's dictates. Parties seeking summary judgment must raise by motion the issues on which they contend they are entitled to prevail as a matter of law. Parties opposing summary judgment have the burden of producing evidence that creates a material issue of fact as to those issues, but only as to those issues. If parties frame and join issues consistently with that framework, some disputes, such as the one in this case over the effect of plaintiffs' ORCP 47 E affidavit, may well be avoided. However, in this case, the dispute over the affidavit remains, and we will address it both because plaintiffs did not assert the procedural deficiency that we raise here in their briefing before this court and because the question that plaintiffs do present concerns affidavits filed pursuant to ORCP 47 E, a matter of particular significance to practitioners.

The specific question to which we now turn is whether the ORCP 47 E affidavit that plaintiffs filed in this case, alone or in combination with the additional evidence in the summary judgment record, was sufficient to defeat summary judgment. ORCP 47 E provides:

> "Motions under this rule are not designed to be used as discovery devices to obtain the names of potential expert witnesses or to obtain their facts or opinions. If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit or declaration shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and *who has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment.*"

(Emphasis added.)

As noted, plaintiffs' ORCP 47 E affidavit provided as follows:

> "Since the time of the filing of [p]laintiffs' [c]omplaint [p]laintiffs have retained a qualified elevator expert whom they intend to rely on at trial to support their claims that [d]efendant \*\*\* was negligent in [its] service and maintenance of the elevators in the 911 building. Plaintiffs['] expert has *actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment.*"

(Emphasis added.)

The italicized part of the second sentence of plaintiffs' affidavit mirrors the italicized portion of ORCP 47 E.[4] Defendant's objection to the affidavit focuses not on the second sentence of plaintiffs' affidavit but on the first. Defendant contends that, by specifying that the expert will support plaintiffs' claims that defendant was "negligent in its service and maintenance" of the elevator, plaintiffs' attorney acknowledged that the expert would testify *only* in support of the claim of negligence, and not that defendant's negligence caused plaintiffs' injuries. Defendant relies on a line of Court of Appeals decisions for the proposition that, "when a party files an issue-specific affidavit, the trial court should conclude that the party does not have an expert for *un*specified issues." (Emphasis in original.) That, defendant asserts, has been the practice in Oregon for a quarter-century, since *Moore v. Kaiser Permanente*, 91 Or App 262, 754 P2d 615, *rev den*, 306 Or 661 (1988).

In *Moore*, a medical malpractice action, the defendants moved for summary judgment on the ground that they were not negligent in their diagnosis and advice and that the plaintiff's return to work did not cause his condition to worsen. *Id.* at 264. In response, the plaintiff submitted both his own affidavit averring that his return to work had aggravated his medical condition and an affidavit from his attorney stating that he had retained an expert who "is available and willing to testify to the diagnoses, standard

---

[4] Plaintiffs' affidavit does not aver that their expert is available and willing to testify. Defendant raises that deficiency in this court, but did not object to the affidavit on that basis in the trial court. We therefore do not consider defendant's argument.

of care and duty of the defendants herein." *Id*. The Court of Appeals observed that the attorney had not stated that the expert would testify to the elements of causation and damages and held that, "when a party chooses to enumerate the elements on which an expert will testify, even though a general assertion would otherwise satisfy the rule, the enumeration must give notice of *all* elements on which the expert may testify." *Id*. at 265 (emphasis in original). In the case before it, the court concluded, the affidavit was sufficient to demonstrate genuine issues of material fact only on the enumerated issues of diagnosis, standard of care and duty, or foreseeability. *Id*. It was insufficient to defeat summary judgment on the issues of causation and damages.

In *Moore*, the court stated that the defendant's motion raised two bases for summary judgment, but, without explaining why, required that the plaintiff create a question of fact in all issues as to which the plaintiff would bear the burden of persuasion at trial, not only those issues raised in the motion. *Id*. The Court of Appeals may have been incorrect in that regard, but its reasoning was otherwise apt.

As the court explained, ORCP 47 E provides that motions for summary judgment are not to be used as discovery devices to obtain either the names of potential expert witnesses or their facts or opinions. That section of the rule authorizes attorneys to submit, in good faith, an affidavit that states that an unnamed qualified expert has been retained and will testify to admissible facts or opinions creating a question of fact and provides that such an affidavit "will be deemed sufficient to controvert the allegations of the moving party" and will be an "adequate basis for the court to deny the motion." ORCP 47 E. However, the court explained, difficulties may arise when an affidavit goes beyond those requirements. *Id*.

To understand why such difficulties may arise, it is helpful to outline the sanctions that may attach when an attorney files an ORCP 47 E affidavit. ORCP 47 E requires that an affidavit filed pursuant to that rule be made in good faith. If an affidavit is presented in bad faith, the offending party must pay the reasonable expenses that the other party

incurred as a result, including reasonable attorney fees, and the attorney may be subject to sanctions for contempt. ORCP 47 G. Consequently, an attorney is precluded from representing that an expert will create an issue of fact on an issue when the expert will not do so. When a motion for summary judgment raises only one issue and the opposing attorney avers that a qualified expert will create an issue of fact sufficient to defeat summary judgment, a determination of whether the affidavit was made in good faith will often be fairly straightforward.[5] However, when a motion for summary judgment raises more than one issue, that analysis may be more complex. It may be more likely that the attorney will intend to defeat the motion with a combination of expert and nonexpert evidence. The attorney is not required to identify the issues that the attorney will prove by expert testimony and those that the attorney intends to prove by nonexpert evidence, and the attorney may not want to reveal the range or limits of the expert's testimony. Thus, an attorney may aver that an expert is available and willing to testify to facts or opinions creating a question of fact without specifying the issues on which the expert will testify. The attorney may do so in good faith, as the Court of Appeals recognized in *Moore*:

> "The affidavit does not have to recite on what issues the expert will testify. It need state only that an expert has been retained and is available and willing to testify to admissible facts or opinions that would create a question of fact."

91 Or App at 265.

We agree. However, the fact that an attorney is permitted to proceed in that fashion does not mean that the attorney must or will do so. An attorney may choose to specifically delineate the issues that an expert will address,

---

[5] However, there also may be circumstances in which the analysis will be more complex. Under ORCP 47 E, an affidavit is necessary only if a party is required to provide the opinion of an expert to establish a genuine question of fact. Therefore, a party may submit a ORCP 47 E affidavit on summary judgment but rely on nonexpert evidence at trial, contending that expert testimony is unnecessary. In that circumstance, at least, and perhaps in others, the fact that a party submitted an ORCP 47 E affidavit but did not call an expert to testify will not necessarily establish that the affidavit was not made in good faith.

perhaps to add clarity to an argument or to avoid any question that an affidavit is made in good faith. Again, we agree with the Court of Appeals' conclusion in *Moore*. When, in an affidavit in opposition to a motion for summary judgment, an attorney avers that an expert will address only specific issues raised in the motion for summary judgment, the affidavit alone will defeat summary judgment only on those specified issues. Other evidence will be required to defeat summary judgment on any unspecified issues raised in the motion.[6]

The affidavit that plaintiffs submitted in this case, defendant contends, is issue-specific. According to defendant, plaintiffs averred that they had retained an expert to testify to one specified element of their negligence claim—failure to adhere to the standard of care—and that other evidence was required to defeat summary judgment on another element—causation.[7]

Defendant is correct that plaintiffs' ORCP 47 E affidavit can be understood to be so limited. The affidavit states that plaintiffs had retained an expert to support their claims that defendant "was negligent in [its] service and maintenance" of the elevator. A reasonable person could understand the quoted phrase to mean that the expert would opine only on whether defendant met the standard of care in performing its service and maintenance obligation. However, in context, a reasonable person also could understand that phrase to mean that the expert would opine on all issues necessary to defeat summary judgment on plaintiffs' negligence claims. First, the affidavit states that plaintiffs had retained a qualified expert to support their "claims" of negligence, not to support a particular element of their negligence claims. Second, another paragraph of the affidavit states that the expert also will support plaintiffs' claims that defendant's modernization and repair of the elevator

---

[6] In *Moore*, the Court of Appeals stated its conclusion a bit differently. The court concluded that, when a party chooses to enumerate the elements on which an expert will testify, the enumeration must give notice of all elements on which the expert will testify. 91 Or App at 265. ORCP 47 E does not include any "notice" requirement, and we prefer to explain the effect of an issue-specific affidavit in different terms.

[7] Defendant does not contend that other evidence was necessary to defeat summary judgment on other elements of plaintiffs' claim, such as damages.

was dangerous and defective. A reasonable person could understand the reference to plaintiffs' negligence claims as a way of identifying the two claims about which the expert would testify.[8] Third, the second sentence of the affidavit states that plaintiffs' expert has "rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment." From that sentence, a reasonable person could understand that the expert's testimony would create a question of fact on all issues in the negligence claim for which expert testimony would be necessary, including the element of causation.

Although plaintiffs' ORCP 47 E affidavit is susceptible of more than one interpretation, ORCP 47 C requires that we view it, like all parts of the record, in the light most favorable to plaintiffs. Plaintiffs are the nonmoving party and we must draw all reasonable inferences in their favor. *Schaff v. Ray's Land & Sea Food Co., Inc.,* 334 Or 94, 99, 45 P3d 936 (2002); *Jones v. General Motors Corp.,* 325 Or 404, 420, 939 P2d 608 (1997). Following that instruction, we interpret plaintiffs' affidavit to mean that they had retained a qualified expert who could testify to an opinion or facts that, if revealed, would create a question of fact on all elements of plaintiffs' negligence claim raised in the motion for summary judgment. Therefore, if defendant raised the issue of causation in its motion for summary judgment (and, as noted, we proceed as if it did), then plaintiffs' ORCP 47 E affidavit was a sufficient basis for denying summary judgment on that issue.

Even if plaintiffs' affidavit addressed only the standard of care and not causation, there also is a second, independent reason for our conclusion that the trial court erred in granting summary judgment on plaintiffs' negligence claim. If we were to give plaintiffs' affidavit the limited interpretation for which defendant advocates—that plaintiffs had retained an expert who could testify only that defendant had failed to meet the standard of care in its service and maintenance of the elevator—a jury could nonetheless infer

---

[8] Plaintiffs also had pleaded a breach of warranty claim that the expert apparently was not expected to address.

from that evidence of negligence and other facts in the summary judgment record that defendant's negligence caused plaintiffs' injuries.

Causation may be proved by circumstantial evidence, expert testimony, or common knowledge. *Trees v. Ordonez*, 354 Or 197, 220, 311 P3d 848 (2013). In *Trees*, a medical negligence case, the court concluded that the plaintiff had adduced evidence from which a reasonable jury could find that the defendant had breached the standard of care by leaving protruding screws near the plaintiff's esophagus following neck surgery. The court also concluded that the jury could infer that the defendant's alleged negligence had caused the plaintiff's injuries from the fact of the protruding screws, expert testimony that the esophagus was perforated, and the fact that the plaintiff's condition had improved after the screws were removed.

In this case, defendant argues, and its employee attested, that elevators may drop "through no fault or negligence of anyone, including, simply because of the age of the elevators." Therefore, defendant contends, a reasonable jury could not infer that plaintiffs' injuries were caused by defendant from the fact of the drop alone. However, plaintiffs did not rely only on the elevator's drop to establish causation. They submitted an affidavit indicating that a qualified expert would testify that defendant had negligently maintained and serviced the elevator. From evidence that the elevator dropped abruptly and without explanation, together with evidence that defendant was negligent in maintaining and servicing it, a reasonable jury could infer that the elevator did not drop due to age or some other unidentified cause but because of defendant's negligence. Of course, a reasonable jury also could reach a contrary conclusion, but, on summary judgment, the question is not which conclusion is most likely but whether an issue of fact exists that permits jury resolution.[9]

In this case, the trial court failed to give effect to plaintiffs' ORCP 47 E affidavit, either because it failed to

---

[9] Plaintiffs argue that, even without the ORCP 47 E affidavit, the summary judgment record is sufficient to defeat defendant's motion for summary judgment under the doctrine of *res ipsa loquitor*. We need not decide that issue.

recognize that the affidavit reasonably could be interpreted to address all issues, including causation, raised by defendant's motion, or because it failed to recognize that, even if the affidavit addressed only the standard of care, the affidavit, combined with other evidence of what occurred, would enable a jury to infer that defendant's breach caused plaintiffs' injuries. The trial court's conclusion that defendant was entitled to summary judgment on plaintiffs' negligence claim because "there's no admissible evidence of causation" was erroneous.

We proceed to plaintiffs' strict liability claim. As noted, the trial court granted defendant's motion for summary judgment on that claim because the court concluded that the summary judgment record demonstrated that defendant did not manufacture, sell, lease, or distribute the elevator or any of its component parts. The Court of Appeals also concluded that defendant was not subject to Oregon's strict liability statute, ORS 30.920. The court reasoned that the only evidence in the record demonstrated that defendant provided a service by installing component parts manufactured and supplied by others and that ORS 30.920 does not apply to such service transactions. *Two Two*, 256 Or App at 796-97.

ORS 30.920 provides, in part:

"(1)   One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer or to the property of the user or consumer is subject to liability for physical harm or damage to property caused by that condition, if:

"(a)   The seller or lessor is engaged in the business of selling or leasing such a product; and

"(b)   The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased."

In enacting ORS 30.920, the Oregon legislature tracked the wording of the *Restatement (Second) of Torts*, Section 402A (1965) and provided that the Oregon statute is to be

"construed in accordance with comments a through m of that Restatement section." ORS 30.920(3).

In *Hoover v. Montgomery Ward*, 270 Or 498, 528 P2d 76 (1974), this court considered the reach of Section 402A in deciding whether a defendant that was alleged to have improperly installed a tire could be held strictly liable. The court cited cases from other jurisdictions which had held that a party that provides a defectively dangerous product in the course of providing a service may be subject to strict liability under Section 402A. *Id.* at 501-02. In one of those cases, *Newmark v. Gimbel's Incorporated*, 54 NJ 585, 258 A2d 697 (1969), the New Jersey Supreme Court held that a beauty shop could be strictly liable for injuries that occurred when a shop employee applied a defective permanent wave lotion to a patron's hair. The Oregon Supreme Court did not express disagreement with *Newmark* or the other cases that it cited, but it declined to extend their reasoning to the case before it. The court determined that the plaintiff had not alleged that the tire that the defendant had supplied and installed was defectively dangerous. *Hoover*, 270 Or at 502. The plaintiff had alleged that it was the service (the installation) that was defective, not the product (the tire). *Id.* at 502-03.

In this case, we also need not decide whether a business that supplies and installs a defective product may be strictly liable for injuries caused by the product. That is because, in this case, the record on summary judgment does not include evidence that defendant supplied the component parts that it installed in the elevator. In an affidavit that defendant filed in support of its motion for summary judgment, defendant's employee averred that "[a]ll components for the modernization were manufactured and supplied by vendors and suppliers specified by GSA or its consultants." Plaintiffs claim that they submitted evidence to create a question of fact on the issue of who supplied the components and who manufactured the elevator. We are not persuaded.

The evidence on which plaintiffs rely is evidence that (1) defendant was hired to modernize the elevator and was paid a significant sum for parts and labor; (2) defendant

stated in a memorandum filed with the court that the micro-processer controls that defendant installed were sold by and shipped directly to the building by another entity (MCE); (3) the government's contracting officer stated in a letter in December 2002 that defendant had performed its modernization work in an outstanding manner, including providing "the best possible products at the best possible cost effective prices"'; and (4) when defendant assigned its inspection and maintenance responsibilities to another party—Centric Elevator Company (Centric)—effective January 1, 2008, it agreed to sell parts to its assignee. We conclude that that evidence does not raise an issue of fact as to whether defendant supplied component parts for installation in the elevator or manufactured the elevator.

Parts of the modernization contract are in the summary judgment record. One page of the contract is the bid schedule demonstrating that the total bid price was $1,011,753.30. The first item on the bid schedule is "elevator modernization" with a lump sum base bid of $856,964.90. Another page of the contract describes the services required for the "initial work" (which we take to be the "modernization") as inspection of the elevators, submission of an inspection report specifying the deficiencies that require correction, and repair or adjustment of the deficiencies as determined by the government. That page does not require defendant to manufacture the elevator or to supply any parts necessary to repair it, and no other evidence in the record shows that defendant billed or was paid for parts that it supplied. Other items on the bid schedule are for interim and long-term maintenance. The pages of the contract that describe defendant's scheduled maintenance and call-back obligations also do not require defendant to provide the parts necessary to fulfill those obligations. However, with respect to "minor repair work," those pages provide that defendant will be reimbursed for "material" at cost, but that the government has the right to furnish to defendant "all parts and/or materials required for a particular repair." Plaintiffs did not produce any documents indicating that defendant did any "minor repair work" pursuant to those provisions or that defendant, as opposed to the government, supplied parts or materials in fulfilling its obligations.

The letter congratulating defendant for "providing the best possible products at the best possible cost effective prices" was sent in 2002, after the modernization was complete but before defendant began its long-term maintenance responsibilities. Given that the contract price for the elevator modernization is stated as a lump sum and that neither the contract nor any other document in the record indicates that that lump sum included reimbursement for parts supplied by defendant or that defendant billed for or received payment for such parts, it is not reasonable to infer from the letter alone that the contracting officer was congratulating defendant for supplying component parts.[10] Rather, read in conjunction with the contract, the letter appears to congratulate defendant for providing services that resulted in the best possible elevator system at a reasonable contract price.

We also do not view defendant's representation that MCE supplied component parts as raising an issue of fact about whether defendant did so. The affidavit submitted by defendant's employee avers that MCE is a third party and that MCE, not defendant, supplied component products.

Finally, the summary judgment record indicates that, in October 2007, defendant assigned its contract to perform long-term service and maintenance services to Centric, which assumed all contractual rights and obligations effective January 1, 2008. In the assignment agreement, defendant agreed to provide Centric with parts and warranted them for one year. However, the agreement between defendant and Centric, which also appointed Centric as a distributor of defendant's products, did not require Centric to procure products only from defendant. Centric was permitted to obtain products from other manufacturers in certain circumstances. The summary judgment record is devoid of evidence that defendant actually sold parts to Centric or that Centric installed defendant's parts in the elevator in which plaintiffs were injured. We therefore agree with the Court

---

[10] It may be true, as *amicus curiae* Oregon Trial Lawyers Association observes, that a defendant may be liable for supplying a product even without charging for it. *See Fulbright v. Klamath Gas Co.*, 271 Or 449, 459-60, 533 P2d 316 (1975) (defendant that supplied vine burner free of charge subject to strict liability). There must, however, be at least some evidence that the defendant is the supplier. Here, the record contains no such evidence.

of Appeals and the trial court that plaintiffs did not raise an issue of fact as to whether defendant manufactured the elevator or its supplied component parts.

Before concluding, however, we think it important to caution against a misreading of this or the Court of Appeals opinion. In explaining its decision, the Court of Appeals stated that the "evidence only supports the allegation that [defendant] provided a service by installing, per [the government's] conditions and specifications, component parts manufactured and supplied by other parties." *Two Two*, 256 Or App at 796. The court's statement is a correct statement of the facts in the record in this case; the record indicates that defendant installed parts that the government specified. However, the government's specification is not material to our analysis. Under ORS 30.920, anyone that is in the business of selling a product that is dangerously defective is liable for resulting injuries. That statute protects consumers of such products even if, as may often be the case, the consumers themselves select the products. *See Restatement* § 402A comment m (explaining that rule does not require showing of consumer reliance on the seller). Thus, if there had been evidence in this case that defendant had supplied the component parts that it installed, the fact that the government had specified those parts would not have relieved defendant of responsibility. Similarly, if there were evidence that defendant had supplied the component parts used in performing its repair and maintenance obligations, it would not matter that the parts originally were manufactured and supplied to defendant by others up the supply chain. It is not only the manufacturer or the original seller that may be held strictly liable for a dangerously defective product. Any seller in the chain of distribution is subject to strict liability under ORS 30.920 and Section 402A. *See Restatement* § 402A comment f (providing that strict liability applies not just to the original wholesale seller, but also to subsequent sellers and distributors of the product).

In summary, the trial court erred in granting summary judgment on plaintiffs' negligence claim but did not err in granting summary judgment on plaintiffs' strict liability claim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.