JAMES, J., dissenting.
On March 28, 2014, plaintiff arrived at Duffy's Irish Pub in Lebanon, Oregon, by taxicab. He planned to leave by taxicab as well, until those plans changed when Jolene Mullenix and John Hidaro agreed to drive plaintiff home. Mullenix and Hidaro had been at Duffy's for approximately five hours and, throughout that time, the pub served them alcohol. After leaving Duffy's, the car, driven by Mullenix, failed to negotiate a curve, hit a tree head on, spun, and impacted another tree. When tested at the hospital, Mullenix's blood alcohol content was measured at .205 percent.
As a result of that accident, plaintiff suffered a traumatic brain injury so severe he had to relearn basic motor skills such as walking. Plaintiff spent time in a rehabilitation facility and it was estimated that it would take at least two years before he would be able to once again function on his own. His doctors estimated that he would never be able to resume his occupation as a plumber. The traumatic brain injury that plaintiff suffered also robbed him of all memory of that night.
As the majority correctly points out, ORS 471.565(2) makes the disproving of complicity an element of a plaintiff's claim, as opposed to a defense asserted by the defendant. Because of the manner in which ORS 471.565(2) is drafted, Oregon is the only state in the country where the burden is placed on the injured to disprove complicity. In all *607 other jurisdictions that have adopted a complicity doctrine to dram shop liability, the burden is on the server to bring forth evidence of complicity-the party least likely to be suffering from debilitating injuries, including traumatic brain injuries affecting memory.
The majority opinion does an exemplary job of resolving the legal issues present and I agree with its conclusions in those areas. I agree with the majority's rejection of defendant's argument that a clear and convincing standard applies in a summary judgment context in this situation. I further agree with the majority in concluding that a person substantially contributes to the intoxication of the patron or guest "when the person's conduct, as described in subparagraphs (A) through (C) of the statute, is a significant and material factor in the patron or guest's intoxication, as opposed to a factor that a reasonable person would regard as insignificant." 292 Or. App. at 596. Finally, I agree with the majority's statutory interpretation of subparagraphs (A) through (C) and the subsequent definitions at which it arrives.
My only point of disagreement with the majority is the application of its legal holdings to the facts here. In analyzing this case under the standard for summary judgment, it is important to distinguish the burden of production from the burden of persuasion .
*225 Because noncomplicity is an element of plaintiff's claim, plaintiff bears a burden of production on summary judgment, if the issue is raised in the motion. As we recently explained:
"[U]nder ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue 'raised in the motion' as to which that party would have the burden of persuasion at trial. Two Two v. Fujitec America, Inc. , 355 Or. 319, 324, 325 P.3d 707 (2014). Accordingly, a party does not have the burden of producing evidence on an issue that is not 'raised in the motion,' and, notably, an issue is not 'raised in the motion' if it is first raised as a basis for summary judgment in the movant's reply memorandum."
Nathan v. Dept. of Human Services , 288 Or. App. 554, 579, 407 P.3d 857 (2017).
*608 The details of defendant's motion for summary judgment are therefore important, because they set forth the "issue" to which plaintiff bears the burden of production. Critically for us in evaluating this summary judgment record on appeal, plaintiff bore no burden to produce evidence relevant to how we now interpret the statute. The plaintiff's burden of production under ORCP 47 C is not an exercise in prognostication. The plaintiff's burden of production is to respond to how the defendant framed the issue before the trial court . See Two Two , 355 Or. at 324, 325 P.3d 707 ("[U]nder ORCP 47 C, the party opposing summary judgment has the burden of producing evidence on any issue 'raised in the motion .' " (Emphasis added.) ).
Here, defendant set forth its theory for how plaintiff contributed to the intoxication in three parts, roughly tracking the statutory language of providing, encouraging, and facilitating, but functionally collapsing those down to a single act: the purchase of alcohol. For the first, providing, defendant framed the issue as follows:
"Plaintiff purchased at least two and as many as five rounds of beer for himself, for Mullenix (the allegedly intoxicated driver), and for Hidaro before the accident."
For the second, encouraging, defendant framed the issue indistinguishably from the first-equating purchasing to encouraging:
"Plaintiff did not merely drink alongside Mullenix; rather, Plaintiff actively participated in the intoxication of Mullenix by buying rounds of beer for both himself and Mullenix and by taking turns purchasing rounds with both Mullenix and her fiancé Hidaro."
And for the third, facilitating, again defendant framed the issue in step with the first-equating purchasing with facilitating:
"Plaintiff was not a passive actor in Mullenix's intoxication. As set out above, he actively socialized with Mullenix in the bar, he bought drinks for Mullenix[.]"
As framed by defendant then, the only issue to which plaintiff bore a burden of production was whether his *609 purchase of some disputed number of drinks substantially contributed to Mullenix's intoxication. In response, plaintiff submitted a number of documents, one of which was an affidavit from plaintiff's expert, who testified:
"Based on Mullenix's gender and weight, three 16-ounce bud lights consumed at the rate stated in Mullenix's deposition would not increase Mullenix's BAC above the .08% BAC legal standard to drive. * * *
"Given Mullenix's gender, body weight, and rate of admitted consumption, she would have needed to consume 11.7 (+/- 1.8) 16-ounce Bud Lights over the course of the night to be consistent with the measured blood alcohol content of .205%.
"Based upon the totality of the circumstances and using a quantitative analysis, I can say with confidence that [plaintiff]'s purchase of 1 to 3 beers did not substantially contribute to Ms. Mullenix's intoxication."
That expert affidavit alone sufficed to meet plaintiff's burden of production as to the issue framed by defendant in its motion for summary judgment.
Thus, despite the complications ORS 471.565(2) introduces by placing the requirement on the plaintiff to disprove complicity, because plaintiff met his burden of production here, our task is straightforward-on *226 this record, in the light most favorable to plaintiff, is there a genuine issue of material fact that plaintiff substantially contributed to Mullenix's intoxication in the manners described in subparagraphs (A) through (C)? And on this record, I conclude that there is a sufficient factual dispute.
First, as to providing, as the majority holds, "under subsection (A), a plaintiff 'substantially contributes' to the intoxication of a patron or guest when the plaintiff has directly or indirectly supplied alcoholic beverages to the patron or intoxicated person, whether by sale or gift, and that act was a significant and material factor in the patron or guest's intoxication." 292 Or. App. at 597, 426 P.3d 219. The presence of the expert affidavit in the summary judgment record creates a genuine issue of material fact as to providing.
*610 The majority equates encouraging to "conduct that encouraged the patron or guest to purchase alcoholic beverages, drink alcoholic beverages, or otherwise engage in drinking activities." Id. at 599, 426 P.3d at 220. And similarly, the majority defines facilitating as actions "mak[ing] it easier for the intoxicated person to consume alcoholic beverages." Id. at 602, 426 P.3d at 222. The majority equates facilitation to acts "aimed at making it easier for drinkers to consume alcohol, such as retrieving drinks at a bar or providing fake identification to minors."Id. (footnotes omitted).
The only evidence in this record that plaintiff encouraged or facilitated Mullenix's intoxication, as the majority defines those terms, is the testimony of Mullenix herself. Yet, this is undercut by other evidence in the summary judgment record introduced by plaintiff. When Hidaro was asked at his deposition how many rounds plaintiff had bought, his initial response was: "I have no idea." At her deposition, Mullenix testified that plaintiff bought multiple rounds. But the summary judgment record exposes contradictions in Mullenix's story over time. In a police report dated March 29, 2014, Mullenix told the investigating officer that she remembered only having three beers at Duffy's. Then, at the time of deposition, her testimony was that she may have had as many as 10 beers.
Against Mullenix's version of events, the record here contains an affidavit from plaintiff stating, "I do not make a habit of encouraging social acquaintances to drink, play drinking games, take shots, or compel them to drink when they do not want to." It is, unarguably, not the strongest evidence. But it is some evidence that goes directly to how the majority interprets both encouraging and facilitation. And given plaintiff's traumatic brain injury, and his lack of memory of the night, it is evidence a factfinder could find valuable and persuasive. Accordingly, I would find summary judgment on this factual record inappropriate. I therefore respectfully dissent.