Submitted July 2, 2014, reversed and remanded on plaintiff's retaliation claim, otherwise affirmed May 4, 2016

Richard LaCASSE,
*Plaintiff-Appellant,*

*v.*

Pamela OWEN,
*Defendant,*
*and*

FOUNTAIN PLAZA, LLC,
*Defendant-Respondent.*

Jackson County Circuit Court
115715L9; A155515

373 P3d 1178

Michael W. Franell filed the brief for appellant.

John M. Kreutzer and Smith Freed & Eberhard, PC, filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

## DUNCAN, P. J.

Plaintiff was fired by defendant[1] and subsequently brought a claim against defendant for retaliatory discharge. Plaintiff alleged that his termination was motivated by his involvement in a complaint of sexual harassment occurring at a different company whose ownership interests were intertwined with defendant's. *See* ORS 659A.030(1)(f) (making it unlawful for an employer to discharge an employee "because that [employee] has opposed any unlawful practice, or because that other person has filed a complaint, testified or assisted in any proceeding under this chapter or has attempted to do so"). In response, defendant moved for summary judgment on the ground that plaintiff could not prove the element of causation—that is, he could not prove that he was fired because of his protected activities rather than his poor performance. The trial court, after ruling that some of plaintiff's proffered evidence was inadmissible, concluded that the remaining evidence in the summary judgment record was not sufficient to create a jury question on causation, and it granted defendant's motion. On appeal, we reverse and remand, holding that the trial court did not give due consideration to the ORCP 47 E declaration from plaintiff's counsel, which, when coupled with other evidence in the record, would permit a jury to find that defendant's asserted bases for terminating plaintiff were a pretext for unlawful retaliation.

## I. BACKGROUND

Defendant, which is a retirement community and residential care facility, hired plaintiff as an executive chef in June 2010, and it fired him approximately six months later, on December 20, 2010. Plaintiff subsequently filed a complaint against defendant for retaliatory discharge. In his complaint, plaintiff alleged that, in the months leading up to his termination, he had received nothing but praise from his supervisor, Pamela Owen. But then, according to plaintiff, he was suddenly fired after assisting a coworker with a sexual harassment complaint.

---

[1] Throughout this opinion, we use "defendant" to refer to Fountain Plaza, LLC, the only respondent in this appeal.

According to plaintiff's allegations, the events precipitating his termination began in November 2010, when he spoke with one of his part-time coworkers, Valdovinos, about sexual harassment that she was experiencing at Anna Maria Manor, LLC (Anna Maria), where she worked a second job. Plaintiff alleged that he and Valdovinos then spoke with Owen about how Valdovinos should handle the situation at Anna Maria and "[s]uggestions were provided to Ms. Valdovinos regarding the handling of her circumstances." When the situation at Anna Maria failed to improve for Valdovinos, plaintiff referred her to a labor attorney who was assisting plaintiff in a separate matter. On December 8, 2010, plaintiff informed Owen that he had referred Valdovinos to his attorney.

Plaintiff alleged that just nine days later—on December 17, 2010—he received a "conference report" that referred to a meeting on December 3 to address his work performance, and he was informed that he needed to sign and return the report. According to plaintiff, he then spoke with Owen and disputed that any performance issues were addressed on December 3. And, on December 19, plaintiff told defendant's executive director, Mary Roper, that he had never received a formal performance review. Plaintiff was terminated the following day.

In his complaint, plaintiff further alleged that defendant and Anna Maria "were under common ownership in the past" and that the two limited liability companies "continue to both have the same designated representative, Lawrence Horton," who "has an ownership interest in [defendant]." According to the complaint, defendant "fired Plaintiff out of retaliation for Plaintiff referring Ms. Valdovinos to his labor attorney."

Plaintiff's complaint also alleged a second claim for relief, which, although not directly at issue on appeal, provides context for how the case was litigated. That second claim for relief, which was ultimately treated as a defamation claim,[2] alleged that defendant had created and published a false performance evaluation and payroll action form, dated

---

[2] The claim was mistakenly labeled as a claim for "wrongful discharge," but was later treated by the parties and the court as a defamation claim.

September 28, 2010, stating that plaintiff was on probation for an additional 90 days. Plaintiff alleged that he had discovered the documents after requesting his personnel file upon termination and that "the performance evaluation forms were fictitious and were created by Defendant Pamela Owen to cover Defendant's retaliatory actions."

In response to the complaint, defendant moved for summary judgment on both of plaintiff's claims. With regard to retaliatory discharge, the motion was directed at the issue of causation. Defendant argued that plaintiff's theory of retaliatory discharge—that he was fired for referring Valdovinos to a labor attorney—was wholly implausible because (1) there was no evidence that Horton, the owner of interests in defendant and Anna Maria, had any involvement in the decision to terminate plaintiff and (2) the evidence established that defendant, like plaintiff, had actually *assisted* Valdovinos in opposing sexual harassment at Anna Maria and had even hired her as a full-time cook after she left there. According to defendant, the decision to terminate plaintiff was, instead, "based *solely* on performance and related issues, and any assistance Plaintiff may have provided to Ms. Valdovinos (regarding her outside employment at the Anna Maria facility) made absolutely no difference or played any part in that decision." (Emphasis in original.)

In support of its motion, defendant offered declarations from Owen and Roper. In Owen's declaration, she averred that the decision to terminate plaintiff's employment was made by Roper, based on plaintiff's escalating performance issues, including resident complaints, deficiencies in kitchen cleanliness and sanitation, difficulties working cooperatively with others, and his lack of accountability for his behavior, all of which were memorialized in a termination letter dated December 20, 2010. She further averred that plaintiff's termination was "entirely separate" from any of the employment issues involving Valdovinos and that, to Owen's knowledge, Horton was not consulted about or aware of the reasons for plaintiff's termination. Roper's declaration likewise stated that the decision was hers alone, was not influenced by Horton, and was based entirely on performance issues—including issues that surfaced during

a "mock survey" that was done in anticipation of an annual Department of Human Services inspection scheduled for January.

Defendant also supported its summary judgment motion with deposition testimony from Valdovinos and plaintiff. In her deposition, Valdovinos testified that Owen was always respectful toward her, that she was never afraid of losing her job because of anything that defendant or Owen did, and that she still works full time for defendant. As for plaintiff's deposition, defendant seized on a part of plaintiff's testimony in which he conceded that he had "no direct knowledge" that Horton was aware of the harassment allegations made by Valdovinos.

In opposition to defendant's motion, plaintiff emphasized two points: (1) defendant never complained about plaintiff's performance issues *before* he referred Valdovinos to his labor attorney; (2) yet, *after* he made the referral, defendant suddenly invented complaints about his work and lied about having provided previous negative performance reviews. In support of his response, he relied on his own deposition testimony to that effect, as well as an affidavit and related exhibit from Carla Tryber, a landlord to whom plaintiff had submitted a rental application in November 2010. Attached to the affidavit was a copy of the application, which contained notes that Tryber made. The notes reflect a conversation with Owen about plaintiff and his job security; the notes state, "very responsible and well liked. They are very happy w/ him[.] Secure job. Impossible not to like him[;] everyone likes him[;] his job's secure."

In reply, defendant reiterated that Roper alone had made the decision to terminate plaintiff for poor performance, and that "a mere temporal proximity between the protected activity and termination is insufficient, without more, to satisfy the causation element," citing *Ledesma v. Freightliner Corp.*, 97 Or App 379, 383, 776 P2d 43 (1989). And, in a footnote, defendant took issue with the admissibility of the Tryber affidavit and attached exhibit, arguing that they constitute "inadmissible hearsay. As an Affidavit, a cursory review of this document reveals it is not properly

notarized; nor does it comply with the form of a Declaration under ORCP 1 E."

At the same time that they were briefing the issues on summary judgment, the parties were also locked in a discovery dispute about the purportedly fabricated performance evaluation in plaintiff's personnel file. After defendant filed its reply brief on summary judgment, but before the court ruled on defendant's motion, plaintiff filed a motion to compel production of the computer files and metadata related to the creation of that performance evaluation.

When the trial court later took up the summary judgment motion, it noted the complicating fact of the parties' pending discovery dispute. The court explained that, "[o]rdinarily the Court would search the record to determine whether a question of fact is raised on the question of causation, but an unusual procedural quirk suggests this inquiry is premature." The court explained that plaintiff's motion to compel sought electronic files regarding the performance review on the theory that the review "was fabricated after he gave a lawyer's name to his co-worker to negate the retaliatory discharge claim." Because defendant had agreed to provide the requested data, the court delayed its consideration of the motion and gave plaintiff additional time to "file a supplemental memorandum addressing any new evidence contained in the electronic performance review."[3]

As part of its order, the court also addressed the admissibility of the Tryber affidavit, which defendant had objected to in its summary judgment reply. The court stated that it would "treat[] the objection as a motion to strike and grant[] the motion for the reasons stated in the objection: T[r]yber's affidavit does not comply with the requirements of ORCP 1 E; the attachment is without foundation and her handwritten notes in the attachment are hearsay."

In the wake of that order, plaintiff filed a supplemental declaration and memorandum in opposition to summary judgment, as well as a motion asking the court to

---

[3] The court granted summary judgment on the defamation claim on the ground that there was no evidence that the performance review was published, regardless of when or why it was created. That ruling is not challenged on appeal.

reconsider striking the Tryber affidavit. The supplemental declaration, which was filed by plaintiff's attorney pursuant to ORCP 47 E, stated that "[a]n unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact." In the supplemental memorandum, plaintiff stated that the ORCP 47 E declaration "should be adequate to overcome the motion for summary judgment." Plaintiff's supplemental memorandum also referred to the motion to reconsider the order to strike Tryber's affidavit, explaining that it "is clear from the face of the affidavit that it is based upon the personal knowledge of the affiant" and that "[t]he fact that Pamela Owen presented a different picture of [plaintiff's] performance to Carla Tryber than what she is claiming in this lawsuit also creates an issue of fact that the jury should decide."

Defendant filed a supplemental memorandum as well, arguing that plaintiff's ORCP 47 E declaration was inadmissible because expert testimony was not "required" within the meaning of ORCP 47 E; that Tryber's affidavit was properly stricken because it was not notarized and included layers of hearsay; and that, in any event, plaintiff had failed to controvert certain "undisputed" facts—namely, that Roper alone, not Owen or Horton, made the decision to terminate plaintiff for reasons that had nothing to do with plaintiff's referral of Valdovinos to a labor attorney, and defendant treated Valdovinos so favorably that no reasonable juror could infer that defendant was upset by plaintiff's assistance to her.

After receiving the additional submissions, the trial court denied the motion to reconsider striking Tryber's affidavit, and the court granted defendant's motion for summary judgment on plaintiff's retaliation claim. In its order, the court stated that it was "adopt[ing] the reasoning set forth in the defendants' motion and reply," presumably including defendant's contention that plaintiff's ORCP 47 E declaration was inadmissible.

Plaintiff now appeals the ensuing judgment, assigning error to the trial court's grant of summary judgment, its decision to strike Tryber's affidavit, and its ruling that

plaintiff's ORCP 47 E declaration was inadmissible. As we will explain, we conclude that the ORCP 47 E declaration was admissible, and that the declaration, coupled with other evidence in the summary judgment record regarding the timing of plaintiff's termination, was sufficient to create a genuine issue of material fact as to whether plaintiff's referral of his coworker to a labor attorney was a substantial factor in his termination. Thus, we reverse and remand the grant of summary judgment without addressing the court's decision to strike Tryber's affidavit.[4]

## II. ANALYSIS

To avoid summary judgment on a claim for relief, a plaintiff must show the existence of a factual question on all dispositive issues framed by the defendant's motion. *Towe v. Sacagawea, Inc.*, 357 Or 74, 85-86, 347 P3d 766 (2015) (citing *Two Two v. Fujitec America, Inc.*, 355 Or 319, 326, 325 P3d 707 (2014), for the proposition that a "party seeking summary judgment frames issues on which party opposing summary judgment must show existence of factual question"); ORCP 47 C.[5] In this case, defendant moved for summary judgment on a single element of plaintiff's retaliation claim: causation.

To prove causation under ORS 659A.030(1)(f)—that is, that plaintiff was discharged by defendant "because" of his protected activity—plaintiff must prove that defendant's unlawful motive was a substantial factor in his termination,

---

[4] Although it is not necessary to our resolution of this appeal, we note that defendant's arguments about the affidavit appear to be based, in part, on the fact that defendant was served with a copy of the affidavit that was not notarized. However, the copy that appears in the trial court record is, in fact, notarized.

[5] ORCP 47 C provides, in relevant part:

"The court shall grant the motion [for summary judgment] if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial. The adverse party may satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule."

or, in other words, that he would have been treated differently in the absence of the unlawful motive. *See Hardie v. Legacy Health System*, 167 Or App 425, 435, 6 P3d 531 (2000), *rev den*, 332 Or 656 (2001) (though variously described as a "but for," "substantial factor," or "factor that made a difference" test, the "crux of the standard, regardless of which phraseology is attached to it, is whether, in the absence of the discriminatory motive, the employee would have been treated differently"); *see also Elk Creek Management Co. v. Gilbert*, 353 Or 565, 584-85, 303 P3d 929 (2013) (explaining that, in retaliation claims under the Oregon Residential Landlord Tenant Act, the legislature "intended that trial courts test causation in the same way that they do in other contexts"—*i.e.*, a tenant can prevail on a retaliation claim by proving that "the tenant's protected activity was a 'material and substantial factor' in the landlord's decision," not that "the tenant's protected activity was the 'sole' or 'dominant' reason for the landlord's decision").

Because plaintiff would bear the burden of proving that element of his claim at trial, ORCP 47 C required plaintiff to produce evidence on the issue of causation to defeat summary judgment. ORCP 47 C allows a plaintiff to "satisfy the burden of producing evidence with an affidavit or a declaration under section E of this rule." ORCP 47 E, in turn, provides, in part:

> "If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit or a declaration of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion. The affidavit or declaration shall be made in good faith based on admissible facts or opinions obtained from a qualified expert who has actually been retained by the attorney who is available and willing to testify and who has actually rendered an opinion or provided facts which, if revealed by affidavit or declaration, would be a sufficient basis for denying the motion for summary judgment."

As described above, plaintiff offered a declaration pursuant to ORCP 47 E, but the trial court nevertheless

granted defendant's motion for summary judgment. On appeal, plaintiff argues that the declaration was, at the least, sufficient to establish that his "performance review," dated in September 2010, was actually created on the day of his termination, thereby supporting his claim that defendant's explanation for his termination was a pretext for its retaliatory motive. Defendant, meanwhile, reprises the argument that it made below, adopted by the trial court, that the affidavit was inadmissible because expert testimony is not proper—let alone "required"—to prove a party's subjective motivation. *See Tarlow v. Landye Bennett Blumstein LLP,* 209 Or App 171, 177, 147 P3d 355 (2006) ("The ORCP 47 E affidavit therefore presents no substantive evidence of malice that would raise a genuine issue of material fact and preclude summary judgment.").

In *Hinchman v. UC Market, LLC,* 270 Or App 561, 348 P3d 328 (2015), decided after the parties briefed this case, we clarified when expert testimony is "required" for purposes of ORCP 47 E. We explained that, although expert testimony might be "required" to create a genuine issue of material fact when issues raised in the defendant's motion are not within the knowledge of the ordinary lay juror, "that is not the *only* circumstance in which expert testimony might be required to establish a genuine issue of material fact." 270 Or App at 569 (emphasis in original). We cited the issue of causation as one that, although sometimes proved by circumstantial evidence or common knowledge, might nonetheless be susceptible to proof by expert testimony and, therefore, the proper subject of an ORCP 47 E declaration. *Id.* at 569-70 (citing *Two Two,* 355 Or at 332-33, as an example of a case in which the Supreme Court "assess[ed] whether the plaintiff's ORCP 47 E affidavit established a genuine issue of material fact regarding causation, notwithstanding the fact that causation can sometimes be proved by circumstantial evidence or common knowledge, because the plaintiff's theory of the case was susceptible to proof by expert testimony"). Thus, the question whether expert testimony is "required" in response to a summary judgment motion will depend on the plaintiff's theory of the claim:

> "Expert testimony is also 'required' to create a genuine issue of material fact if the point or points put at issue by

the defendant's summary judgment motion are ones that are susceptible to proof through expert testimony, given the plaintiff's particular theory of her claim. *In those circumstances, the court must accept the attorney's representation in the ORCP 47 E affidavit that she has such testimony available and will endeavor to prove her case with it at trial, and must deny summary judgment.* \* \* \* As a consequence of Oregon's policy choice to broadly shield the content of expert testimony from discovery and disclosure pretrial—a policy choice allowing a party to keep secret even the precise *issue* on which an expert will testify, *Two Two*, 355 Or at 329—the assessment of whether an ORCP 47 E affidavit creates an issue of fact precluding summary judgment will sometimes require an act of imagination by the summary judgment court."

270 Or App at 570 (first emphasis added; second emphasis in original).

In this case, considering plaintiff's theory of the case, at least some issues bearing on causation were susceptible to proof by an expert—namely, a computer forensics specialist. In his complaint, plaintiff alleged that defendant had falsified and backdated a negative performance evaluation to cover up its retaliatory motive; then, by the time of the summary judgment motion, the parties were engaged in a discovery dispute pertaining to that evaluation, specifically the computer files and any metadata related to the creation of that document. The trial court ultimately delayed ruling on the retaliation claim to give plaintiff an opportunity to address any new evidence uncovered as a result of the production of the electronic files, and plaintiff submitted the ORCP 47 E declaration at that point. Given the sequence of events—and plaintiff's focus on the computer files and metadata related to the performance evaluation—ORCP 47 E required the trial court to presume that plaintiff had an expert willing and able to testify in support of his theory that the performance evaluation was falsified, even if plaintiff did not want to "reveal the range or limits of the expert's testimony." *Two Two*, 355 Or at 329.

That presumptive evidence of a falsified performance evaluation, along with plaintiff's own deposition testimony that he was performing well and had never been told

otherwise, would allow a factfinder to conclude that defendant's proffered explanation was a pretext for the actual reason that plaintiff was terminated. Coupled with the timing of plaintiff's discharge—just 12 days after plaintiff told Owen that he had referred Valdovinos to a labor attorney—there is a question of fact on this record as to whether plaintiff's support of Valdovinos, including referring her to a labor attorney, was a substantial factor in defendant's decision to terminate him six months into his employment. *See Huber v. Dept. of Education*, 235 Or App 230, 241, 230 P3d 937 (2010) (considering "close temporal proximity" between discharge and protected activity as circumstantial evidence that "supports that inference" of retaliation); *Herbert v. Altimeter, Inc.*, 230 Or App 715, 724-25, 218 P3d 542 (2009) (same).[6]

Although defendant came forward with evidence and arguments in support of its motion that might undermine plaintiff's theory of retaliation before a jury, nothing in those arguments or evidence defeats plaintiff's claim at the summary judgment stage. First, defendant argues that "[a]ny link between the protected activity and his termination is broken * * * due to the poor showing on the December 17, 2010 Survey," three days before plaintiff's termination, which "destroys any possible inference that the termination was retaliatory." Although a reasonable juror might be persuaded that defendant was terminated based on the issues identified in the "mock survey," that inference is not *compelled* by this record. A juror might also reasonably conclude that the mock survey provided convenient support for a decision that defendant had already made—and later attempted to cover up with a false performance evaluation—based on plaintiff's involvement with Valdovinos. That is, a reasonable juror could infer that, but for defendant's unlawful motive, the issues in the "mock survey" would not have resulted in the discharge of an employee who, up until that time, had

---

[6] Defendant asserts that "[p]laintiff cannot rely on timing alone to establish a *prima facie* case of causation where, as in this case, other evidence breaks any temporal tie and provides a reasonable basis for inferring that the adverse action was not retaliatory." This is not a case in which plaintiff relies on "timing alone," but rather relies on timing as part of the circumstantial evidence to prove that defendant discharged him for an unlawful reason.

been performing well and had never been told of any performance problems.

Relatedly, defendant asserts that there is no evidence that Horton, who was the link between defendant and Anna Maria, had any knowledge of Valdovinos's complaint or plaintiff's termination, and that it was Roper—not Horton or Owen—who ultimately made the decision to terminate plaintiff. However, for reasons previously discussed, there is sufficient evidence in the summary judgment record from which a reasonable juror could infer that Roper relied on a falsified performance evaluation as part of her proffered reasons for terminating plaintiff. Her motives are a question for the jury, regardless of her own declaration to the contrary. *See, e.g., Perry v. Rein,* 215 Or App 113, 127-28, 168 P3d 1163 (2007) (where the plaintiff's evidence places the credibility of the affiant at issue, the subjective belief of the affiant is not susceptible to summary judgment); *Henderson v. Jantzen, Inc.,* 79 Or App 654, 658, 719 P2d 1322, *rev den,* 302 Or 35 (1986) ("A plaintiff's *prima facie* case does not disappear merely because a defendant asserts a nondiscriminatory reason which may or may not persuade the trier of fact."). And, in any event, a trier of fact could conclude that Roper's decision was influenced by Owen, an improperly motivated subordinate. *See La Manna v. City of Cornelius,* 276 Or App 149, 165, 366 P3d 773 (2016) (explaining that, even if the plaintiff's evidence did not support an inference that the ultimate decisionmaker was biased, it would nonetheless "support an inference that * * * a 'biased subordinate * * * influenced or was involved in the decision or decisionmaking process'" (quoting *Poland v. Chertoff,* 494 F3d 1174, 1182 (9th Cir 2007))).

Finally, defendant argues that plaintiff's "assertions of alleged retaliation are entirely belied by the completely opposite treatment accorded to the victim, Ms. Valdovinos." Defendant argues that it supported and guided Valdovinos in connection with the problems occurring at Anna Maria, and that it then elevated Valdovinos to a full-time employee, where she remains in good standing with defendant. Again, although that might be a forceful argument to a jury, it does not foreclose plaintiff's claim as a matter of law. The

fact that the victim of harassment may have been treated well by defendant does not mean—as a matter of logic or law—that defendant could not have retaliated against a different employee who assisted that victim. It is conceivable that an employer might retaliate against a perceived intermeddler, but not the victim, for any number of reasons—perhaps because the employer blames the assisting employee for escalating the situation, or wants to stifle an employee who encourages others to hire an attorney to resolve work-related issues. On this record, it is for the jury, not a court, to choose among the competing inferences that might be drawn as to defendant's motives in discharging plaintiff.

Reversed and remanded on plaintiff's retaliation claim; otherwise affirmed.